CHAUNCEY W. MOORE AND OTHERS v. BONNELL AND DU-
SENBURY.

1. An assignment of real and personal property, made in the state of New
   York by a resident of that state, in which a preference is given to
   creditors of a certain class, but which is legal at the domicil of the as-
   signor, cannot dispose of movable property in this state; such assign-
   ment being illegal and void according to our statute regulating
   assignments for the benefit of creditors.
2. But a resident of the state of New York, in which the assignment was
   made, cannot be permitted to impeach it in our courts, on the ground
   of its incompatibility with our laws.
3. The case of *Varnum* v. *Camp*, 1 *Green* 326, reviewed and affirmed.

On demurrer to plea.

For plaintiffs, *Theo. Little.*

For defendants, *A. O. Zabriskie.*

On the 4th December, 1861, the plaintiffs, who had their
domicil in New York, executed in that state an assignment
of all their property, real and personal, for the benefit of their
creditors; such assignment creating preferences in favor of
creditors of a certain class, and in this respect being repug-
nant to the statute of this state regulating assignments by
debtors for the benefit of their creditors, although it was valid
by the laws of New York. The defendants were indebted to
the plaintiffs at the time of this assignment, and the debt
thus due was, subsequent to the assignment, attached in this
state by a creditor of the plaintiffs, the creditor also being a
resident of New York. The assignees using the names of

the plaintiffs, brought this suit for the debt in question against the defendants, who pleaded the attachment and the proceedings thereunder as a defence. To this plea there was a demurrer.

THE CHIEF JUSTICE. In the case of *Varnum* v. *Camp*, 1 *Green* 326, it was, after mature deliberation, decided by this court that a general assignment, made in a foreign jurisdiction by a debtor in favor of his creditors, was not valid, so as to pass the title to the personal effects of the debtor situated within our territory, as against the creditors of the assignor, if it contravened the essential provisions of the statute of this state regulating such assignments. The fact that the assignment was made in the place of the domicil of the debtor, and that it was lawful by the law of such domicil, was considered not to render the transfer effectual, so far as regarded the property of the debtor which was subject to our laws.

It is now insisted that this decision was erroneous and should be reconsidered, and that a different rule should be adopted by this court, more in accordance with what is claimed to be the present state of legal science in this country.

As the case now under consideration, in one of its aspects, presents facts which call for the application or rejection of the principle adopted in *Varnum* v. *Camp*, I shall briefly review, in connection with some of the more recent adjudications, the legal grounds of that decision.

It may be considered one of the maxims of international jurisprudence that personal property, as a general rule, has no *situs*, but appertains to the person of the owner; and that, as a consequence, such owner can dispose of it by any instrument or in any method and to such uses, as are authorized by the law of his domicil. The recognition of this principle seems to be universal in the works of all jurists who treat of the law of nations, and this unanimity is not surprising when we consider the great importance of the regulation to commerce and to the friendly intercourse of the people of independent governments. And it would seem that the rule

Moore v. Bonnell.

in question is not so much a convenience as it is a necessity of trade—one of those fundamental things without which traffic would be, in all its parts, impeded and embarrassed. If the law of the locality of the goods or of the debt was to be taken as the criterion of the legality of their transfer, it is evident, their transmission would often be attended with serious perplexity; for it would on most occasions be quite impracticable for the owner of the goods or the creditor to whom the debt was due, to ascertain, with sufficient exactness, the diversified requirements of the local laws of the different countries through which such goods might pass, or in which the person of the debtor might, at any moment, happen to be. The principle, then, that personal effects have no locality, arises out of the necessities of trade, and independent of such necessity there is no reason why foreign governments should, from the considerations of comity or on any other ground, be called upon to adopt the law of the domicil of the owner of such effects with regard to the extent of his power over them or the modes of their transmission. As the rule then is of the utmost importance, it should be the care of every judicial tribunal to preserve it in its integrity. But this rule, like all others that control to any great extent the practical affairs of mankind, is subject to reasonable limitations. That such limitations exist is universally admitted. " It follows," says Judge Story, " as a natural consequence of the rule which we have been considering (that personal property has no locality) that the laws of the owner's domicil should in all cases determine the validity of every transfer, alienation, or disposition made by the owner, whether it be *inter vivos* or be *post mortem*. And this is regularly true unless there is some positive or customary law of the country where they are situate, providing for special cases (as is sometimes done,) or from the nature of the particular property, it has a necessarily implied locality." *Conflt. of Laws*, § 383. And again, at a subsequent page, the same author remarks : " And no one can seriously doubt that it is competent for any state to adopt such a rule in its own legislation, since it

has perfect jurisdiction over all property, personal as well as real, within its own territorial limits. Nor can such rule, made for the benefit of innocent purchasers and creditors, be deemed justly open to the reproach of being founded in a narrow or a selfish policy." § 390.

That the rule in question then has its limitations, is not to be denied; but the difficulty has been to ascertain what those limitations should be. Some of them have been agreed on.

Thus, it is admitted that the rule does not, so far as it relates to the payment of debts, apply to the estates of persons deceased. It is entirely settled that after the death of the owner the property has a *situs*, and that then the dispensation of the property among the creditors is to be regulated by the *lex rei sitæ*.

Again: a second limitation of the rule exists in cases of assignments, made under the stress of the bankrupt or insolvent laws of foreign countries. Although this is not the rule of English law, the doctrine, as above stated, is undoubtedly established in this country by a series of decisions which are not now to be questioned.

And it would seem that both of these limitations are founded in principle and are reasonable restrictions of the rule in question, and both, in my estimation, are to be justified on the same ground, which is this, that upon the death or insolvency of the debtor, his property, of necessity, must be taken out of the course of commerce. All that then remains to be done is to wind up the estate. The welfare of commerce no longer requires the application of the *lex domicilii*, and the consequence is, that an appeal to international comity for a surrender of the effects, under such circumstances, has no ground to rest upon. When the act to be done is a mere distribution of the assets among the creditors, why should the government, having jurisdiction over the goods by reason of their location, send its own citizens for payment of their claims to the home of the debtor? Small claims are not worth a distant pursuit, and the consequence of the admission of the rule in cases of insolvency and bankruptcy, would

be to sacrifice all the minor foreign debts and throw the effects into the hands of the domestic creditors, or such other creditors as might hold claims of magnitude. It would be difficult, in my opinion, to show in what particular, so far as the welfare of commerce is concerned, a distribution of .the assets at the place of the domicil or the debtor is more beneficial in any important respect, than distributions made under equitable laws in the countries in which the effects may be located. Under such circumstances, then, after death or insolvency, as the interests of commerce will not be materially promoted by the fiction that personal effects have no local habitation other than that of their owner, in my opinion it has been rightly held, that the law of comity does not prevent an independent government, in the exercise of its undoubted authority, from effectuating its own local policy with regard to the property of the debtor found within its territory.

In the case of *Varnum* v. *Camp,* the rule under discussion was declared to be subject to a third limitation, the court holding that the same principle should be applied, as against creditors, to voluntary assignments by debtors, when essentially inconsistent with our local law, as had been adopted with regard to those made by force of bankrupt or insolvent systems. In that case, as in the one now before the court, there had been a foreign assignment by a debtor in favor of his creditors, and this court then adopted the doctrine that, to make such assignment valid, it was necessary that it should be for the equal benefit of the creditors, inasmuch as all preferences were expressly forbidden by the statute of this state. This was admitted to be a limitation of the rule of international law, that personal property has no locality.

I cannot but think that this limitation also is justified both upon principle and by the decided weight of authority. It is difficult to perceive how an assignment, voluntarily made by a debtor for the benefit of his creditor, differs in substance from one executed under the compulsion of an insolvent or bankrupt law. I am aware that a discrimination has been sought to be made on the ground that in the case

of involuntary transfers, they are to be regarded as the act of the courts or of the local law, which have no extra territorial effect. This reason seems to be too technical. There is, to my mind, scarcely a shade of difference between the coercion of circumstances impelling a failing debtor to wind up his affairs and that liquidation brought about by a creditor taking the initiative and proceeding against him. In *Holmes* v. *Remsen*, 4 *Johns. C. R.* 460, which was a case of a bankrupt, Chancellor Kent felt constrained to give effect to the assignment, "because it is equivalent to a voluntary act of the party over his own property." "Every man's assent is presumed to a statute." And Chief Justice Parsons, in *Goodwin* v. *Jones*, 3 *Mass.* 517, "considered the assignment under the bankrupt laws as the party's own act, since it was in the execution of laws by which he was bound, and since he voluntarily committed the act which authorized the making it." And in the same manner Sir Samuel Romilly, in his argument in the case *Ex parte Vere*, 19 *Ves.* 95, with the force of truth characterizes these voluntary assignments as "private bankruptcies." Being a general disposition of all the property of the debtor on terms which usually afford him most of the benefits of a bankrupt's discharge, and affecting, as they frequently do, large numbers of persons, they are, as I think, properly to be considered as fit subjects for control by the legislation of every country.

Regarded then in this point of view as matters of public interest, it is clear that the same reasons which are held to justify the refusal to give effect to foreign assignments by an insolvent or bankrupt, will equally apply to the case of these voluntary transfers. In both cases the end of the proceeding is the same—a distribution of the effects among the creditors; and in both cases such distribution can be made in the foreign country where the effects are situated, with equal facility and equity. Why should the insolvent debtor be permitted to make a distribution of his foreign effects, when an assignment made by force of the law of such debtor's domicil is held to be inefficacious? As far as commerce is con-

cerned, the effect of each class of assignments is precisely the same; and it would certainly seem, if we are to pay regard to the law of comity, that a transfer of property, induced and sanctioned by the laws of a foreign government, should be received in all other countries with much higher respect and consideration than should be accorded to the mere voluntary act of an individual. We are bound to presume that the foreign law is founded in enlarged principles of public policy; the design being to do equal justice to all creditors, wherever resident. I cannot but think that it would be a most strange result to refuse to enforce such a law, and at the same time to effectuate assignments made at the mere caprice of the insolvent.

The decisions upon this subject are painfully conflicting. In Pennsylvania it is settled in several cases that a voluntary assignment, even when inconsistent with the laws of that state, is to be entirely regulated by the *lex domicilii. Law* v. *Mills*, 18 *Penn.* 185. And the same doctrine is maintained in the Circuit Court of the United States, in *Caskie* v. *Webster*, 2 *Wallace, jun.*, 131, and *Dundas* v. *Bowler*, 3 *McLean* 397. These last two cases, however, are mere expressions of judicial opinion, unaccompanied by argument or by any illustration from authority.

The case of *Hanford* v. *Paine et al.*, 32 *Vt.* 443, was put upon the ground that the state law did not embrace foreign assignments, and that consequently they were not to be affected by it. I am unable to concur in this view. The state law did establish, as it appears to me, a local policy and such policy was exclusive of all others.

The opposite doctrine, that foreign voluntary assignments will have no effect as against creditors, upon property situated in a country with whose policy the terms of such assignments are inconsistent, has been maintained by various well considered decisions in Massachusetts, Delaware, Maine, and Connecticut. *Ingraham* v. *Geyer*, 13 *Mass.* 146; *Fall River Iron Works Company* v. *Croade*, 15 *Pick.* 11; *Zipcey* v. *Thompson*, 1 *Gray* 243; *Fox* v. *Adams*, 5 *Greenl.* 245; *The*

*Richmondville Man. Com.* v. *Prall,* 9 *Conn.* 489 ; *Mayberry* v. *Thisler,* 1 *Harrington* 349.

In the case above cited from 1st *Gray,* and which is the most recent of the decisions in Massachusetts upon this point, the court say : " The law of New York, *proprio vigore* cannot obtain here. It derives its effect only from the rule of comity ; and that rule refuses to give force to laws of other states which directly conflict with the policy of our own." And in the same opinion it is subsequently said : " No comity can require us to give effect to an assignment made in another state, which is not only against our well settled policy, but against our direct legislation, and the effect of which would be to give a preference to citizens of other states over those of our own." And in the case of *Fredericks* v. *Frazier,* 4 *Zab.* 162, in this court, the doctrine maintained in *Varnum* v. *Camp* was referred to with approbation.

In this state of the authorities, after the lapse of thirty years, since *Varnum* v. *Camp* was decided, it seems to me that the point settled by it is scarcely open to debate. It certainly would require the most complete demonstration of its fallacy before this court could be brought to reverse a doctrine which, for so great length of time, has been regarded as the settled law of this state. But as has been before stated, in my opinion, that doctrine is recommended not only by the greater weight of authority, but is sustained by correct principle.

But there is another aspect to this case which requires consideration. It appears from the plea and the fact is admitted by the demurrer, that the attaching creditor is a resident of New York, and it is insisted that he has no right to appeal to the laws of this state to invalidate an assignment valid by the laws of his own domicil.

This is not a new question, but has been before the courts of this country on several occasions. And whenever the decision has been directly upon the point, the creditor resident in the place in which the assignment was made has not been permitted to assail it in the foreign jurisdiction. The law is

thus laid down by *Burrill,* p. 370 : " As against citizens of
other states and especially as against citizens of the state
where the assignment was made, the rule appears to hold
without qualification.   That an assignment, valid by the
laws of the state in which it is made, is valid everywhere."
The same doctrine was enforced in several cases in Massachu-
setts.   Thus, an assignment made in New York and valid by
the laws of that state, was held valid against a subsequent
attachment by a citizen of New York of property in Massa-
chusetts, although such assignment, as against creditors resi-
dent elsewhere than at the place of domicil of the assignor,
would have been invalid in Massachusetts.   *Burlock* v. *Taylor,*
16 *Pick.* 335.   So to the same effect are the decisions in *Whip-
ple* v. *Thayer,* 16 *Pick.* 25, and *Daniels* v. *Willard, Id.* 36.

In the case of *Bholen* v. *Cleveland,* 5 *Mason* 174, Judge
Story seems to rest his decision on the same ground.   And
the question was again presented and was similarly decided
in *Sanderson* v. *Bradford,* 10 *New Hamp.* 265.   In this last
case the court use this language : " But if the laws of Massa-
chusetts, where the debtor in this case resides, authorize pre-
ferences unknown here, that furnishes no ground upon which
they are entitled to bring our laws in conflict with those of
the domicil of the debtor, merely because he happens to have
a debt due from a citizen of this state."

The authorities upon this point all appear to tend in the
same direction, that is, to exclude the creditor having his
domicil at the place where the assignment was made, from
calling it in question on the ground that it is forbidden by
the laws or is inconsistent with the policy of the foreign
jurisdiction.

In addition to authority, it may be remarked that it has
invariably been held under the English bankrupt system,
that in case an English creditor has compelled a payment of
a debt in a foreign country out of the assets of the bankrupt
there situate, he can be forced, by proceedings in behalf of
the assignee, to bring the moneys thus realized into the
general fund for equal distribution.   This result has been

attained on the theory that the bankruptcy, as to all persons subject to the laws of the realm, operates as an assignment of all the property of the bankrupt wherever situate. None of such citizens can question the legal efficacy of the transfer. It seems to me that in legal theory this result is correct, and that the principle upon which it rests would apply to the case of a citizen of the state in which a voluntary assignment has been made, who collects in a foreign state moneys which, according to the laws of his own domicil, belong to the assignee. If that be so, and I do not see what other view can be taken, the result would be, if the attaching creditor in this case should succeed in his suit, to withdraw *pro tanto* from this state the moneys in question, and subject them to the New York assignment.

And it may be further remarked that if the present suit is to prevail, the creditor preferred in the assignment could come into this state and claim his distributive share under the proceedings in attachment; which result would clearly be in direct frustration of the policy of our own laws.

The conclusion to which I have come is, that the attaching creditor in this case, being a resident of New York, the place of the assignment in question, cannot be permitted to impeach it in our courts on the score of incompatibility with our laws, and that, therefore, the judgment on the demurrer in this case should be in favor of the plaintiffs.

Judgment for plaintiffs on the demurrer.

ELMER, J., concurred.

CITED in *Parr* v. *Brady*, 8 *Vroom* 203; *Hurd* v. *City of Elizabeth*, 12 *Vroom* 5.

AFFIRMED in *Bentley* v. *Whittemore*, 4 *C. E. Gr.* 465.