MARCH TERM, 1868.

BENTLEY, appellant, and WHITTEMORE and others, respondents.

1. A voluntary assignment made by a non-resident debtor, which is valid by the law of the place where made, cannot be impeached in this state with regard to property situated here, in behalf of non resident creditors, on the ground that such assignment is incompatible with the statute of this state.

2. This rule obtains as well with respect to realty as to chattels situate in this jurisdiction, provided, the form of the assignment is such as is required by our land regulations.

3. A debtor residing in New York made an assignment, with preferences, for the benefit of his creditors, such disposition being legal in that state. As auxiliary to such assignment, he also executed in due form a conveyance to his assignees of land in this state. The assignees having sold the land thus conveyed, it was subsequently levied on under judgment by certain creditors, all of whom were non-residents of this state. Upon a a bill filed by the purchaser, it was held that the proceedings by such creditors should be perpetually enjoined.

On the 28th of May, 1857, the respondent, Whittemore, conveyed and assigned to Messrs. Freeman and Kumbel all his property, real and personal, in trust for his creditors,

subject to certain preferences among them. The deed of assignment, among the other property embraced in it, described particularly a lot of land in the city of Paterson, and conveyed the same in due form to the assignees in fee. After having been formally acknowledged, this deed was, on the 1st of June, 1857, recorded in the clerk's office of the county of Passaic. At the date of the assignment, the parties, assignor and assignees, were residents of the state of New York, and it was admitted to be valid by the laws of that state. Two years before the assignment, Whittemore had given a mortgage for $2000 on this Paterson lot, to one Mary Morrell, and twenty days before the assignment, he had given another mortgage on the same lot to the respondent, Kumbel, for $8000; both of which mortgages were subsisting encumbrances at the date of the assignment.

On the 12th of January, 1858, Messrs. Freeman and Kumbel sold and conveyed the lot in Paterson to the appellant, Bentley, for the sum of $8000, of which $6000 was paid in cash, and the balance liquidated by the assumption of the Morrell mortgage. At the time of this sale the Kumbel mortgage was canceled. The appellant, Bentley, afterwards paid off the Morrell mortgage and had it canceled on the record, on the 27th of May, 1863. He also, at a large expense, repaired and fitted up the mill on this lot, and carried on his business in it.

The respondents, Hempstead, Anable, Howard, and Walker, were, severally, creditors of Whittemore, and at different times between the 8th of June, and the 30th of September, in the year 1863, each recovered a judgment against him in the Supreme Court of this state, and by force thereof caused the lot sold to Bentley· to be seized and advertised for sale. Bentley filed his bill in the Court of Chancery to restrain these proceedings, and to have his title protected, or, at all events, to have the mortgages declared to be valid liens, on the ground that the same had been canceled by mistake. Kumbel likewise filed a cross bill, praying that his mortgage for $8000 might be revived, for the reason that

he had canceled the same from misapprehending his title under the assignment.

The decree in Chancery held, the conveyance to the assignees invalid against the judgment creditors, and refused to permit the mortgages to be revived. This was the decree appealed from.

It further appeared that the judgment creditors, Hempstead and Anable, were residents of New York, Walker of Rhode Island, and Howard of New Hampshire, and that they were such at the date of the assignment.

The opinion of the Chancellor is reported in 3 *C. E. Green,* 370.

*Mr. S. Tuttle* and *Mr. Bradley,* for appellant.

*Mr. J. W. Taylor* and *Mr. C. Parker,* for respondents.

The opinion of the court was delivered by

THE CHIEF JUSTICE.

The decree entered in the court below, can be sustained only on the ground that the assignment made by Whittemore, for the benefit of his creditors, to Freeman and Kumbel is void with respect to the property of the debtor, situate in this state. This assignment was executed in New York, and was valid by the laws of that state; but as it did not provide for an equitable distribution of the property among the creditors, but created preferences, it is insisted that it stands opposed, in this respect, to the statutory policy of our own state. That such an assignment could not prevail against a legal lien subsequently acquired by a creditor, a resident of this state, upon property situated, at the time of the assignment, in this state, was the doctrine which was settled, upon mature consideration, in the case of *Varnum* v. *Camp,* 1 *Green's R.* 326. But the decree now before this court, has extended the boundaries of the legal principle thus established, and has applied it so as to invalidate, in favor of

citizens of other states, the assignment now in controversy. Two of the judgment creditors in this case are and were residents of New York, the state under the laws of which the assignment in question was made. The other two were non-residents of this state, the one residing in Rhode Island, the other in New Hampshire.

With regard, then, in the first place, to the legal position in this affair, of the two creditors resident in New York.

In the case of *Moore* v. *Bonnell*, 2 *Vroom* 90, it was held that an assignment for the benefit of creditors, which had been made in New York, and in conformity to the laws of that commonwealth, could not be impeached in our courts by a citizen of that state, on the ground of its incompatibility with our laws, I am not aware that this decision stands in opposition to any authority. As far as my research extends, it is sustained by every adjudication which has been made upon the subject. In *Burlock* v. *Taylor*, reported in 16 *Pick.* 335, it was decided—this, too, being the only point presented by the case—that an assignment of personal property by an insolvent debtor in New York, which was valid by the laws of that state, was valid against a subsequent attachment, by a citizen of New York, of property in Massachusetts, belonging to the debtor, although such assignment was invalid under the laws of Massachusetts. This result was reached by that enlightened tribunal after a careful consideration of the question, and is maintained in an opinion, prepared evidently with care, by Chief Justice Shaw. The same question being raised in *Sanderson* v. *Bradford*, 10 *New Hamp.* 265, the court said : " The creditors in this case are citizens of a foreign government, and have no particular claim to the benefit of our laws, if there is any conflict between them and the laws of Massachusetts.　＊　＊　＊ No reason suggests itself why they should stand in any better situation than the creditors of Bradford, who are citizens of Massachusetts." Other judicial recognitions of this doctrine may be found by a reference to *Burrill on Assignments*, *p.* 370.

In the case of *Moore* v. *Bonnell*, it was suggested, as one of the difficulties inherent in the theory of permitting a creditor resident at the place of assignment to put it in question out of that jurisdiction, that any acquisition by him of the property of the debtor embraced in the assignment, although situated in a foreign jurisdiction, would be a legal injury to the assignee, remediable by action in the courts of the domicil of such debtor.    In point of fact, I now discover that this principle has been put in practice, and in such a mode as seems to me clearly to demonstrate the impolicy and injustice of permitting in this case, the creditors resident in New York, to repudiate this assignment, which is unobjectionable by the laws of their own domicil. . The circumstances of the case to which I refer, were these : A debtor, residing in the state of New York, executed an assignment for the benefit of his creditors, of personal property, whose *situs* was then in the state of Illinois.    This instrument was made and delivered in the state of New York, and, after its execution and delivery, certain of the creditors, who were residents of New York, obtained an attachment, and levied it on the property in Illinois, which they subsequently caused to be sold under a judgment obtained by force of this proceeding.    In this state of the facts, it was decided by the courts of New York, that such creditors were liable to the assignee in trover in a suit in that state, although the assignment was void by the laws of Illinois.    *Van Buskirk* v. *Warren*, 34 *Barb*. 457 ; *S. C.*, 13 *Abbott's Pr. R.* 145.

It will be observed, therefore, that so far as the decree in the present case relates to the claims of the two judgment creditors resident in New York, it would, if sustained, have this effect : Such creditors would be enabled to raise from the lot conveyed to the appellant, the amount of their debts ; but that, as in their own state, such act would be regarded to be wrongful as respects Freeman and Kumbel, the assignees, they would be compelled to pay in under the assignment, the money thus obtained.    Without disputing the authority of the decision just quoted, it would appear impossible to avoid

this ·inequitable consequence; but by adhering to the note adopted in *Moore* v. *Bonnell,* the justice of the case is perfectly preserved, for I cannot think it in any degree a hardship to forbid a citizen from calling in question the validity of the laws of his own state, even though he does so in a foreign jurisdiction.

Nor am I able to concur in the view that there can be any discrimination, in the application of this principle, between real and personal estate. If the assignment, as to form and the parties to it, be adequate to pass the title to real property according to the laws of the *rei sitæ,* it can be avoided only on the ground that such assignment is in discordance with the policy of the laws of such state. No doubt is intended to be hinted as to the settled existence of the rule, that the validity of every disposition of real estate must depend upon the law of the country in which that estate is situated. The authorities referred to by the Chancellor in his opinion in this case, make it conspicuously manifest that this principle has passed into a maxim of universal recognition. I do not question this rule, therefore, but I am constrained to question the application which has been made of it to the facts now in hand. It is admitted, that the title to the premises in question cannot pass unless such title has been conveyed, in every particular, whether with respect to forms, persons, or objects, in entire subjection to the laws of this state; but the conviction which compels me to dissent from the view already taken is, that such conformity, in the most complete degree, does actually exist. Is this not so? With regard to mere mode, no question can be made on this head. The deed in question has been regularly executed, acknowledged and recorded, and is in due legal form; in all ceremonious parts, therefore, the transaction is a compliance with our land regulations. What, then, is to render this title defeasible? I can imagine nothing that can be set up to invalidate it, except the idea that the distribution of the assignment, to which this conveyance is ancillary, militates with the provisions of our statute upon that subject. Now,

it is certainly not to be denied that if this incompatibility exist, the conveyance, on the principle just admitted, is completely inefficacious. But I have satisfied my own mind that there is no such inharmony as is supposed, between the statute of this state and the regulations of this deed, as they are now drawn in question. It is true that this assignment has created preferences which are forbidden by our laws, and that, therefore, the deed accompanying it could not be set up against creditors, resident in this state. But this does not touch the point of inquiry, which is, whether the laws of this government prohibit preferences between non-resident creditors, under an assignment legal by the laws of the debtor's domicil? Have we any statute inconsistent with such a disposition of the debtor's property among foreign creditors? If we have, this conveyance, as I think, is certainly void; but if we have none such, then, just as certainly it must be valid. But that we have no such law is the precise deduction upon which the decision of *Moore* v. *Bonnell*, and its train of accordant cases, can alone be rested, for the hypothesis there was, that we have no local policy which a creditor, resident in the place of assignment, can put in operation to defeat a transfer not repugnant to the law of such place. It is certain that our statute relating to assignments does not discriminate between personal and real estate; the two species of property stand upon the same footing; the creation of a preference which would vitiate a transfer of the former, would, undoubtedly, annul a conveyance of the latter, and I think it equally clear that the converse of this proposition is also true, and that any disposition of the debtor's property, which is admissible with regard to chattels, is likewise admissible with regard to realty. When, consequently, we decide that preferences among non-residents, created by a valid foreign assignment, is not inconsistent with our local policy, and that with regard to such class of creditors, chattels situated within this state will indefeasibly vest in the assignee, we remove every pretense, as I must think, for the conclusion, that under similar conditions, a

conveyance of lands, for identical purposes, is invalid. Touching personal property, we determine such preferences do not conflict with our local regimen; after such a concession, it seems to me logically impossible to maintain that, with respect to land, such preferences do conflict with such regimen. As the enforcement, therefore, of the present assignment, in its application to the citizens of New York, does not in any wise contravene any law or policy of this state, I think it should be completely carried into effect, as well with regard to realty as with regard to personalty.

In the next place, then, with respect to the claims of the two other creditors, the one being a resident of Rhode Island, the other of New Hampshire.

By recurring to general principles, I think it will become at once apparent that the enforcement of these claims against the premises in question also, ought not to receive the sanction of this court. In *Varnum* v. *Camp*, the ground of decision, invalidating a foreign assignment which created preferences, was, that we had established in this state a local policy under which our citizens had a right to be protected. It was admitted that, as a general rule, a transfer of property valid where made, would be effectual everywhere; but it was also deemed equally clear, that the recognized exception to the rule was, that it was not to be enforced to the manifest injury of our own citizens. A state cannot be required, thus it was argued, by any of the obligations of comity, to give up its own system, and substitute in lieu of it any part of the social arrangement of a foreign jurisdiction. This limitation, as well as the rule itself, is firmly established as a part of the international law. But upon what principle is it that the citizen of another state can ask us to refuse to recognize the validity of an assignment made in the state of New York, and in conformity to her laws? Upon what plea, consistent with comity, under such circumstances, are the authorities of this government to repudiate a transaction valid by the laws of a sister state? If the question touched

one of our own citizens, we could vindicate our rejection of such transaction on the ground of our statute, passed legitimately, for the special regulation of the affairs of such citizen. But if such rejection relates to the citizen of another state, how is such a line of conduct to be justified? We might indeed urge, as a sort of excuse, that the law of New York, regulating assignments, was not similar to the law of this state, and that we preferred the regulations of our own law, and therefore would not permit the law of New York to prevail in our state with respect to the citizens of Rhode Island or New Hampshire. But I cannot think we have a right to endeavor to arbitrate, in such a concern, between the state of New York and the citizens of these other states. By force of the public code, the affair would seem to stand thus : A state, by her laws, ordains as valid a certain mode for the assignment of personal property. She has no right to insist that such mode shall be effectuated by any other country, in derogation of the local regulations of such latter government ; but she has a right to have such mode regarded as effectual in all other respects. I can have no doubt that the legal tribunals of New York would scrupulously respect an adjudication of this court, refusing to give effect to an assignment of property valid in New York, but inconsistent with the laws of this state, in a case in which the rights of one of our own citizens were involved ; but I can have as little doubt that such decision would not be respected, if it treated such transfer as invalid in favor of the citizen of another state. The true rule of law and public policy is this : that a voluntary assignment made abroad, inconsistent, in substantial respects, with our statute, should not be put in execution here to the detriment of our citizens, but that, for all other purposes, if valid by the *lex loci*, it should be carried fully into effect. It is highly desirable that the judicial determinations in the several states should be in harmony on this important subject, and it would certainly seem, from present indications, that the rule above

propounded will be the one most likely to receive general approbation.

Before closing, it is proper to say that the case of *Hutcheson* v. *Peshine*, 1 *C. E. Green* 167, does not, in principle, enter into the matter now before this court. The assignment in that case was regarded as an involuntary one, and was therefore obviously subject to rules very dissimilar from those controlling the present inquiry.

In my opinion, the decree should be reversed with the costs in the Court of Chancery; and such of the respondents as are judgment creditors, should be perpetually enjoined. The cross-bill being unnecessary, under the view above taken, should be dismissed, but without costs.

The foregoing view renders it unnecessary to consider the other subjects embraced in the argument.

The decree was reversed by the following vote:

*For reversal*—BEASLEY, C. J., BEDLE, CLEMENT, DALRIMPLE, DEPUE, ELMER, KENNEDY, OGDEN, VAIL, VREDENBURGH, WALES, WOODHULL. 12.

*For affirmance*—None.