147 N.J. Super. 212 (1977)
371 A.2d 84
IAC, LTD., PLAINTIFF-RESPONDENT,
v.
PRINCETON PORSCHE-AUDI, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 11, 1977.
Decided February 7, 1977.
*213 Before Judges MATTHEWS, SEIDMAN and HORN.
Mr. Gordon C. Strauss argued the cause for appellant.
*214 Mr. Dennis J. O'Grady argued the cause for respondent (Messrs. Riker, Danzig, Scherer & DeBevoise, attorneys; Mr. James S. Rothschild, Jr. on the brief).
The opinion of the court was delivered by HORN, J.A.D.
The primary question which is presented by this appeal is whether a security interest which was taken on a vehicle sold in Canada and which was valid and enforceable under Canadian law is also enforceable in New Jersey against a purchaser (defendant) for value without notice of the lien after the vehicle was brought to New Jersey and a "clear" New Jersey certificate of ownership was issued and transferred properly to the New Jersey purchaser.[1]
The trial judge in an action for conversion brought by plaintiff, the Canadian security-interest holder, against the New Jersey purchaser answered the question affirmatively by granting a summary judgment in favor of plaintiff on the limited issue of defendant's liability.[2] We granted defendant leave to appeal pursuant to R:2:2-3(b) and elected to determine the appeal on the motion and after oral argument. R. 2:11-2.
On August 2, 1976 one Charles Ryan, who has since absconded and is not a party to this action, applied to plaintiff IAC, Ltd., to finance his purchase of a 1977 Porsche automobile from Auto Hamer, Inc., a registered Porsche dealer in Quebec, Canada. The automobile cost $15,700, of which $5,700 was a down-payment. Ryan applied to plaintiff to finance the remaining $10,000. Plaintiff approved the application after a credit check, and full payment for the automobile was given to Auto Hamer, Inc., at which time they delivered the Porsche to Ryan.
*215 In connection with the financing Ryan executed a conditional sales agreement with IAC, Ltd., which reserved title to the vehicle thereunder until payment to it of $12,470.76, the sum of the principal loaned and the finance charges. It is not disputed that, as the trial judge appropriately found, the security interest of plaintiff was perfected in Canada and that plaintiff thereby obtained a valid lien on the automobile under the law of Canada.
Four days later Ryan sold the automobile, which had a total mileage of 610 miles, to defendant Princeton Porsche-Audi for $9,000. In the sale of the vehicle from Ryan to defendant, Ryan presented a certificate of ownership issued by the New Jersey State Motor Vehicle Department which did not show any lien held by IAC, Ltd., or any other entity, because Ryan falsely represented that there were no encumbrances.
The following three items from the files of the New Jersey Division of Motor Vehicles were submitted to the trial court. They consist of:
(1) A Canadian motor vehicle document which on its face identifies Ryan as the owner of the subject motor vehicle and which contains no lien information, although on the reverse side of the document a space which provided for the inscription of "Restrictions" remained without notation therein.[3]
(2) Ryan's application for a New Jersey certificate of ownership, on which no security interest is noted.
(3) A copy of the New Jersey certificate of ownership (showing no security interest) which was issued to Ryan in New Jersey and thereafter tendered to defendant in connection with the purchase by the latter.
For the purpose of the motion for summary judgment plaintiff stipulated that defendant acted in good faith. The record is somewhat obscure as to the sale of the vehicle by *216 defendant. However, defendant does not challenge the form of action.
Before the Uniform Commercial Code (Code), N.J.S.A. 12A:1-101 et seq., became effective in New Jersey on January 1, 1963, the common law of this State recognized valid out-of-state security interests as a matter of comity. Marvin Safe Co. v. Norton, 48 N.J.L. 410 (Sup. Ct. 1886); Annotation, "Conflict of laws as to chattel mortgages and conditional sales of chattels," 13 A.L.R. 2d 1312, § 7 at 1318 (1950). This common-law rule was modified by statutes such as the Uniform Conditional Sales Law when enacted in this State in 1919. N.J.S.A. 46:32-1 et seq., particularly § 20; Thayer Mer. Co. v. First Nat. Bk. of Milltown, 98 N.J.L. 29 (Sup. Ct. 1922), aff'd o.b. 98 N.J.L. 907 (E. & A. 1923). Numerous lien statutes were repealed upon the enactment of the Uniform Commercial Code. N.J.S.A. 12A:10-105.
The sections of the Code applicable to the factual situation present in this case are N.J.S.A. 12A:9-103(3) and (4). The pertinent portions of these sections are as follows:
(3) If personal property * * * is already subject to a security interest when it is brought into this state, the validity of the security interest in this state is to be determined by the law (including the conflict of laws rules of the jurisdiction where the property was when the security interest attached. * * * If the security interest was already perfected under the law of the jurisdiction where the property was when the security interest attached and before being brought into this state, the security interest continues perfected in this state for four months and also thereafter if within the four month period it is perfected in this state. * * *
(4) * * * [I]f personal property is covered by a certificate of title issued under a statute of this state or any other jurisdiction which requires indication on a certificate of title of any security interest in the property as a condition of perfection, then the perfection is governed by the law of the jurisdiction which issued the certificate.
The Motor Vehicle Certificate of Ownership Law of this State (motor vehicle law), N.J.S.A. 39:10-1 et seq., was specifically saved from repeal by the terms of the Code, N.J.S.A. 12A:10-104, and remained effective, N.J.S.A. *217 12A:9-203 (see note preceding N.J.S.A. 39:10-1). The motor vehicle law, §§ 9 to 11, provides for the issuance by the Director of the Division of Motor Vehicles (Director) of a certificate of ownership upon application to him, which certificate must be delivered by the registered holder to the transferee in order to validly transfer a vehicle. Security interests covering a vehicle must be noted thereon.[4]Cf. Ferrante v. Foley, 49 N.J. 432 (1967); Eggerding v. Bicknell, 20 N.J. 106, 111 (1955); National City Bank of New York v. Del Sordo, 16 N.J. 530 (1954); Sayre & Fisher Brick Co. v. Dearden, 23 N.J. Super. 453, 459 (Law Div. 1952).
As already stated, the trial judge, in substantial reliance upon First Nat'l. Bank of Bay Shore v. Stamper, note supra, held that the foreign lien was valid and enforceable with respect to the automobile in New Jersey. This result is conceded by defendant if § 9-103(3) of the Code governs. Defendant contends, however, that it does not control in view of § 9-103(4), because the vehicle when sold to it was covered by a certificate of title issued under a statute of this State which required indication on a certificate of title of the security interest.
The court in Stamper, supra, decided the question contrary to defendant's contention on comparable facts  primarily in reliance on Casterline v. General Motors Acceptance Corp., 195 Pa. Super. 344, 171 A.2d 813 (Super. Ct. 1961); Churchill Motors, Inc. v. A.C. Lohman, Inc., 16 A.D.2d 560, 229 N.Y.S.2d 570 (App. Div. 1962); Al Maroone Ford, Inc. v. Manheim Auto Auction, Inc., 205 Pa. Super. 154, 208 A.2d 290 (Sup. Ct. 1965), and a comment of the Editorial Board of the Uniform Commercial Code. The Editorial comment as quoted in Stamper reads:
Subsection 4 is new to avoid the possible necessity of duplicating perfection in the case of a vehicle subject to a certificate of title *218 law requiring compliance therewith to perfect security interest. The certificate of title law requirements are adopted as the test for perfection.
It is noteworthy that the quoted statement of purpose does not appear in the Code Comment which follows N.J.S.A. 12A:9-103. Paragraph 7 of the Code Comment which follows § 9-103 is somewhat ambiguous. It says that collateral, with certain exceptions not applicable here, may be brought into this State subject to a security interest which has attached and may have been perfected under the laws of another jurisdiction[5] but "[i]f the property is covered by a certificate of title, subsection (4) applies."
Casterline v. General Motors Acceptance Corp., supra, was not an appropriate precedent. It was concerned with transactions which took place before the enactment in Pennsylvania of subsection 9-103(4). The court did not have occasion to even discuss the effect of that section. Churchill Motors, Inc. v. A.C. Lohman, Inc., supra, erroneously relied on Casterline and the above-quoted Editorial Board statement. The court in Al Maroone Ford, supra, blindly followed Casterline, although noting that the Code had been amended.[6]
The New Jersey Study Comment which follows N.J.S.A. 12A:9-103 merely states that subsection (4) "substantially restates the present law of New Jersey. Cf. Van Syckle v. Keats, 125 N.J.L. 319 * * * (Sup. Ct. 1940)." That case supports a view contrary to that of Stamper. It held that where the reservation of title was noted on the records of the then Commissioner of Motor Vehicles it was not necessary for a conditional seller to renew his reservation of *219 title by refiling pursuant to N.J.S.A. 46:32-16[7] after the initial filing. Thus the court recognized that the provisions of the motor vehicle law superseded the requirements of the Uniform Conditional Sales Act before the enactment of the Code in New Jersey.
We are of the view that the plain meaning of the text of subsection (4) must prevail over the Editorial Board comment. Defendant in the case at bar acquired the motor vehicle when it was covered by a certificate of title issued under a statute of New Jersey which required indication thereon of any security interest in the property as a condition of perfection. This interpretation accords with the obvious intention of our Legislature in enacting the comprehensive motor vehicle law covering liens on motor vehicles and the transfer of motor vehicles. See 18 A.L.R.2d 813, 817 (1951); Merchants' Securities Corp. v. Lane, 106 N.J.L. 576, 578 (E. & A. 1930).
Thayer Mer. Co. v. First Nat. Bk. of Milltown, supra, is somewhat illustrative of the legislative policy of our State to protect our citizens against liens effected in foreign jurisdictions on property brought into our jurisdiction. In that case plaintiff sold a vehicle to Chaffee December 20, 1920 under a conditional sales agreement in New York. The agreement was duly filed according to the law of that state. Within a few days Chaffee brought the car to New Jersey without plaintiff's knowledge, in violation of the agreement. Almost immediately after the car was in New Jersey a creditor of Chaffee attached the vehicle. On December 28, 1920 plaintiff learned of the existence of the attachment and caused its attorney to write to the attorney of the attaching creditor, advising him of plaintiff's interest in the automobile. Plaintiff failed to file its conditional sales agreement or a copy thereof within ten days after receiving notice of the removal of the car, as required by our existing *220 law (N.J.S.A. 46:32-20, since repealed). Thereafter plaintiff instituted an action in replevin. The trial judge held in favor of the attaching creditor under the statute. He also held that the facts did not warrant a finding that the creditor was estopped from taking advantage of the protection of the statute by their conduct.
In affirming, the Supreme Court said:
* * * As a general rule, a transfer of property valid where made is effectual everywhere; but a universally recognized exception to this rule is that, where it is opposed to some statutory policy of the state of the rei sitae, and where it is sought to be enforced, the statute is paramount and the rule is nullified thereby. Varnum v. Camp, 13 N.J.L. 326; Moore v. Bonnell, 31 N.J.L. 90; Bentley v. Whittemore, 19 N.J. Eq. 462. And so where a state, in the exercise of its sovereign power, regulates by positive law the disposition of personal property found within its borders, and prefers its own attaching creditors to a foreign assignee of a chattel, or the conditional vendor thereof, the statutory right conferred upon the resident creditor overrides the rights of such assignee or conditional vendor vested in him by the law of the forum where the contract was made. * * * [98 N.J.L. at 32-33]
An authoritative text on the Code, Anderson, 4 Uniform Commercial Code (1971), interprets subsections 9-103(3) and (4) to mean that where a vehicle subject to a lien perfected in a nontitle jurisdiction is brought into a title state and a new certificate of ownership is issued in the title state, the law of the latter will govern. Thus, it is stated:
Recognition of the title certificate issued in the state of origin and the perfection of the security interest noted therein continue only as long as the title certificate of the state of origin is the only certificate. Once a new certificate is issued in a second state it becomes "the jurisdiction which issued the certificate" and its law governs the perfection of a security interest.
The underlying rationale of Code, § 9-103(4) is that there shall be only one title certificate for an automobile, that originally issued if it is still in existence, but the certificate of state #2 when such a certificate is issued shall be the controlling system. It would be impractical to charge the public with notice of notations in prior cancelled certificates or applications, which, though still extant, had *221 been issued in foreign unknown states. Consequently, once a certificate is issued in state #2, it is the law of that state which determines whether there is a perfected security interest in the motor vehicle and the creditor must comply with the law of state # 2 in order to obtain perfection. [Anderson, op. cit., § 9-103:23 at 64-65 footnotes omitted]
In view of the foregoing we hold that a security interest which was taken and perfected on a vehicle in a foreign jurisdiction is not enforceable in New Jersey against an innocent purchaser for value without notice of the lien after the vehicle is brought into this State and a New Jersey certificate of ownership is issued and properly transferred to the purchaser. To the extent that Stamper conflicts with our holding, it is overruled.
Our view accords with that expressed in Phillips Ford v. St. Paul F. & M. Ins. Co., 465 S.W.2d 933, 42 A.L.R.3d 1158 (Tex. Sup. Ct. 1971), a case involving substantially similar facts and interpretation of the same sections of the Code For a general discussion of the subject, see Annotation, "Automobiles: Priorities as between vendor's lien and subsequent title or security interest obtained in another state to which vehicle was removed," 42 A.L.R.3d 1168 (1972); Watkins, "Case Comment," 47 Boston Univ. L. Rev. 430 (1966).
For the foregoing reasons the judgment entered below is reversed and the matter is remanded for such further proceedings as may be appropriate. We do not retain jurisdiction. No costs.
NOTES
[1] By the transfer of a certificate of ownership in accordance with the New Jersey law which did not show an outstanding security interest.
[2] The judge relied substantially on First Nat'l Bank of Bay Shore v. Stamper, 93 N.J. Super. 150 (Law Div. 1966).
[3] Canadian law does not require that a lien notation appear on the title papers or any other certificate of ownership of a motor vehicle.
[4] Thus New Jersey is known as a "title state." Canada is a "non-title" jurisdiction.
[5] Defendant argued that because Canada was a foreign country and not a sister state the Code did not apply. Not so. Uniform Commercial Code comment following N.J.S.A. 12A:103, n. 7.
[6] Subsection (4) was enacted in Pennsylvania in 1959 (P.L. 1023, § 9). See Churchill Motors, Inc. v. A.C. Lohman, Inc., supra, 229 N.Y.S.2d at 579.
[7] As already noted, this statute was repealed when the Code became effective.