Casterline et al., Appellants, *v.* General Motors Acceptance Corporation.

Argued March 6, 1961. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., absent).

*Herman E. Cardoni,* for appellants.

*Raymond F. Lowery,* for appellee.

OPINION BY FLOOD, J., June 15, 1961:

This case requires us to determine the competing claims to an automobile asserted by the defendant, the assignee of a New York conditional sales contract, and the plaintiffs who are subsequent purchasers of the car in Pennsylvania.

The problem arises out of the following sequence of events:

On October 14, 1957, in New York, Old Reliable Motors Sales sold the car to Jules Simon on a condi-

tional sales contract and assigned the contract to General Motors Acceptance Corporation, the defendant.

Later that day Simon transferred title to the car to John E. Schwartz, who thereupon obtained a New York passenger vehicle registration certificate in his own name.

Still later on the same day, Schwartz drove the car from New York to Wilkes-Barre, Pa., and there sold and delivered it to the Casterlines, the plaintiffs. He also executed an assignment on the New York registration certificate and delivered it to the plaintiffs. The plaintiffs paid Schwartz $2,530 for the car and at the time of the purchase they had no notice of any lien, encumbrance or interest which the defendant may have had in the car.

On the next day, October 15, 1957, the plaintiffs applied for a Pennsylvania certificate of title for the car, and in the course of their business, sold it to Reverend Leo A. Burns, who obtained a new Pennsylvania Title Certificate for the car.

On October 21, 1957, the defendant filed the conditional sales contract in Bronx County, New York.

On December 5, 1957, no payments having been made under the conditional sales contract, the defendant repossessed the car from Father Burns without court proceedings, as it was entitled to do under New York law.

Thereafter Father Burns notified the plaintiffs of the repossession and requested them to rescind the sale and repay the purchase price to him.

On December 12, 1957, after the defendant had refused to redeliver the car to Father Burns, plaintiffs rescinded the sale to Father Burns, refunded the full amount of consideration paid by him, and thereafter on January 12, 1958, brought this action in replevin against the defendant, seeking possession of the car or the cost of replacing it.

1. The original sale in New York was governed by the New York Conditional Sales Act, 40 McKinney's Personal Property Law, §§60-81, which requires no notation of the security interest on the title certificate, and no notation thereof appeared on the title certificate delivered to the plaintiffs by Schwartz. Section 64 of this act provides that any provision in a conditional sale reserving property in the seller shall be valid as to all persons except as otherwise provided in the act. Section 65 makes the conditional sale void as to any purchaser from or creditor of, the buyer who, without notice, purchases the goods or acquires a lien thereon by levy or attachment before the contract or a copy thereof is filed, unless the contract or copy is filed within ten days after the conditional sale. The only other limitation on the conditional seller's rights is contained in Section 69, which provides that when the conditional seller expressly or impliedly consents that the buyer may resell the goods prior to the performance of the condition, the reservation of property shall be void as against purchasers from the buyer for value in the ordinary course of business, even though the contract or a copy is properly filed.[1]

Since there is nothing in the stipulation to indicate that in the original sale to Jules Simon, there was any implied or express consent that Simon might resell and no statement that Simon was a dealer, the defendant's security interest was valid against all persons under the New York law since the contract was filed within ten days of the conditional sale. Its interest would not prevail over the plaintiff if it had been created in

---

[1] The New York Statute here referred to is the Uniform Conditional Sales Act, which was in effect in Pennsylvania prior to the enactment of the Commercial Code. The sections of the New York Act above mentioned are identical in language to Sections 4, 5 and 9 of the Pennsylvania Act of May 12, 1925, P. L. 603 (repealed), 69 PS 401, 402 and 406.

Pennsylvania because of the absence of a notation on the title certificate, as required by the Uniform Commercial Code, Act of April 6, 1953, P. L. 3, §9-302, 12 A. PS §9-302;[2] Motor Vehicle Code, Act of May 1, 1929, P. L. 905, Art. II, §203(b), as amended by the Act of May 18, 1949, P. L. 1412, §3, which was in effect when these transactions took place and which is identical in this respect with Section 203 of the revised Motor Vehicle Code, Act of April 29, 1959, P. L. 58, §203(b), 75 PS §203(b).[3]

The determination as to law governing the right of the parties depends upon the conflict of laws rules in Pennsylvania, the jurisdiction in which the property was located when it was replevied. 14 C.J.S., Chattel Mortgages, §14, p. 606. The applicable conflict of laws rule is therefore found in the Uniform Commercial Code itself, in §9-103(3), 12A PS 9-103(3), which provides:

"(3) If personal property is already subject to a security interest when it is brought into this state, the validity of the security interest is to be determined by the law of the jurisdiction where the property was when the security interest attached, unless the parties understood at that time that the property would be kept in this state and it was brought here within thirty days thereafter for purposes other than transportation through this state. If the security interest was already

[2] The amendment of October 2, 1959, P. L. 1023, §9, was not in effect at the date of the transactions here involved. Consequently all reference to the code in this opinion are to text prior to that amendment, unless otherwise noted.

[3] There is no indication in the stipulation of facts that John E. Schwartz, who sold the car to the plaintiff, was a dealer as to whom a certificate of the title would not be required under Section 201(b) of The Vehicle Code of May 1, 1929, P. L. 905, as amended by the Act of June 27, 1939, P. L. 1135, §1. Cf. Section 201 of The Vehicle Code of April 29, 1959, P. L. 58, 75 PS §201.

perfected under the law of the jurisdiction where the property was kept before being brought into this state, the security interest continues perfected here for four months and also thereafter if within the four month period it is perfected here. The security interest may also be perfected here after the expiration of the four month period; in such case perfection dates from the time of perfection in this state. If the security interest was not perfected under the law of the jurisdiction where the property was kept before being brought into this state, it may be perfected here; in such case perfection dates from the time of perfection in this state."

Plaintiffs claim that the security interest, even though valid under the first sentence of §9-103(3) above, had not been perfected, as required under the later sentences of that subsection to give it priority over them, when the car was brought into Pennsylvania. They argue that at the time it was brought into this state and sold to the plaintiffs, the conditional sale contract had not yet been filed in New York and therefore all the steps necessary to perfection had not then taken place.

The defendant contends, and the court below held, that the security interest must be considered as having been perfected when the car was brought into Pennsylvania since the contract was thereafter filed in New York within the time limit provided in the New York Conditional Sales Act.

The question then is whether the security interest is "perfected" as that word is used in Article 9-103(3) of the Commercial Code, when the car is brought into Pennsylvania before all the steps necessary to protect the secured creditor in New York have been taken, but also before the time for taking those steps under the New York Act has expired, and those steps are later taken in New York within the prescribed time.

2. The word "perfect" is not used in the New York Conditional Sales Act. The court below concluded that since the language of the New York Act protects the secured creditor against a purchaser during the ten day period allowed for filing, the security interest is deemed perfected during that period. We think its reasoning is sound.

The purpose of perfection under the Uniform Commercial Code is to secure the priority of the holder of a perfected security interest in goods against subsequent purchasers and lien holders, other than purchasers of consumer goods and certain buyers in the ordinary course of business or liens for services or materials in connection with the goods. Uniform Commercial Code, §§9-201, 9-301, 9-303(2), 9-307, 9-310.

The purpose of filing under the New York Conditional Sales Act is very similar. It is the protection of the security holder's interest in the property against subsequent purchasers and persons acquiring liens by levy or attachment, other than buyers in the ordinary course from the purchaser when there is an implied or express consent to resale prior to the performance of the condition.

Both statutes provide for the attainment of protection for the security interest holder by some method of giving public notice, although when the subject of the security interest is an automobile, the two statutes provide quite different methods of notice. New York requires public notice by filing in the county of the debtor's residence while Pennsylvania requires a notation on the title certificate.

The similarity of purpose and the general method of protection of the public by some form of public notice make us conclude that the filing provision of Section 65 is equivalent to perfection as that phrase is used in Section 9-103(3) of the Commercial Code. Therefore, if the provision of Section 65 is complied

with by the creditor in New York, he is protected in Pennsylvania under the Uniform Commercial Code, §9-103(3), at least to the extent that a perfected Pennsylvania security interest holder would be protected. That provision was complied with here and the defendant's security interest takes priority over the plaintiffs, since they do not claim, nor is there anything in the stipulation to the effect, that they are buyers of consumer goods, buyers in the ordinary course of business under §1-201(9) and §9-307(1) or purchasers from a buyer with express or implied permission to resell prior to performing the condition. Cf. *Sterling Acceptance Co. v. Grimes*, 194 Pa. Superior Ct. 503, 168 A. 2d 600 (1961).

3. The fact that the filing had not yet taken place when the car was brought into Pennsylvania does not affect defendant's priority. The security interest was good under New York law against all ordinary purchasers for ten days, if the contract was filed within that time. This is not perfection by relation back at filing, as plaintiffs seem to contend. The security interest was perfected at once when the contract took effect, subject to losing its priority if the contract was not filed in time.

It is to be noted that from the moment the security interest attaches under the New York law, the holder obtains protection under the terms of the act at least substantially equal to that given a perfected security holder in Pennsylvania under the code.

A type of protection prior to filing, akin to that given by perfection, is not unknown to the code. Section 9-301(2) gives to the holder of a purchase money security interest, if he files within ten days after he gives value,[4] priority over the transferees in bulk and

---

[4] Within ten days after the collateral comes into the hands of the debtor under the 1959 Amendment.

lien creditors whose rights attach during the ten day period. Plaintiffs point to the comment to §9-303[5] which states that filing under §9-301(2) after the time when the security interest attached but within the ten day period is not perfection. They argue from this that the similar provision in the New York Act cannot establish perfection before filing under §9-103(3). It is true that there is no perfection before filing under §9-301(2), since the purchase money security interest holder before filing does not get protection against all, but only some, of the parties against whom a perfected security interest holder is protected. However, it does give protection against some persons as to whom other unperfected security holders are not protected under §9-301(1), e.g., a transferee in bulk who receives delivery and a lien creditor. Therefore, while the comment may be correct to the extent that a purchase money security interest is not fully perfected before filing under §9-301(2) and that it does not get the full protection given a perfected security interest under §9-201 and §9-303(2), yet it gets considerably more protection than is given to an ordinary unperfected security interest under §9-301(1). It is clear that the code recognizes a situation under §9-301(2) in the ten day period prior to filing in which a purchase money creditor has a higher standing with regard to the protection of his rights than other unperfected security holders. It is only a semantic difficulty arising out of the absolute character of the word "perfect" that precludes us from saying that it is partially perfected. Despite the quoted comment to §9-303, we think that §9-301(2) gives support to our conclusion that the defendant's security interest here was perfected in the

---

[5] Under §1-102(f) the Comments "may be consulted in the construction and application of" the code. This provision was deleted by the Amendment of October 2, 1959, P. L. 1023, §1.

sense in which the word is used in §9-103(3) when the plaintiffs purchased the car.

4. We conclude that the word "perfected", as used in §9-103(3) with relation to personal property subject to a security interest when it is brought into this State, cannot be construed to mean precisely the same thing as it does in §§9-301 and 303 with relation to security interests created in Pennsylvania. We are compelled to this conclusion for several reasons. Perfection in the Pennsylvania method of notation on the title certificate is impossible in New York when there is no statutory provision for such notation. Moreover the New York Act does not use the word "perfection" or spell out some of the nice distinctions made by the Uniform Commercial Code between perfected and unperfected interests and situations that lie between the two. The introductory clause to §9-303(1) setting forth the conditions under which a security interest is perfected seems to recognize this. Section 9-303(1) begins with the clause: "Except as provided in §9-103 with reference to property which is already subject to a perfected security interest when it is brought into this State . . ." Then follows the various methods of perfecting in Pennsylvania.

The comments relied upon by the appellant to the effect that perfection means that the secured party has taken all steps necessary to give public notice of his claim (comment to §9-302) or to put third parties on notice of his claim (comment to §9-303) may be true as to perfection of a security interest created in Pennsylvania. They are not applicable to perfection, as that term is used in §9-103(3) of the code, of a security interest created in New York under the circumstances before us.

"Perfected" as it is used in §9-103(3) means that the situation is such that at the time of bringing the

property into Pennsylvania, the security interest is protected generally in New York against the classes of purchasers, creditors and lien holders against whom a perfected security interest would be protected in Pennsylvania. The protection does not exactly coincide perhaps, because we are dealing with two different statutes, but we think the construction here adopted is the only one which can give full effect to §9-103(3).

5. It is to be noted that the language of §9-103(3) of the Uniform Commercial Code makes it clear that the requirements of §203 of The Vehicle Code with regard to the notation of security interests in motor vehicles on the title certificate, no longer apply to interests obtained outside Pennsylvania in circumstances such as we have before us in states which have no provision for such notation. Consequently the plaintiffs are not aided by our decisions in *First National Bank of Jamestown v. Sheldon,* 161 Pa. Superior Ct. 265, 54 A. 2d 61 (1947) and *Rice Street Motors v. Smith,* 167 Pa. Superior Ct. 159, 74 A. 2d 535 (1950), both decided before the effective date of the Uniform Commercial Code. The conclusion here reached under the Uniform Commercial Code is in accord with the rule in the majority of jurisdictions without any statutory provision such as §9-103(3). *Bank of Atlanta v. Fretz,* 148 Tex. 551, 226 S.W. 2d 843 (1950) ; 14 C.J.S. 607, n. 6. Pennsylvania which was almost alone in the minority before the code (14 C.J.S. 609, n. 19), has adopted the majority rule legislatively in §9-103(3) of the code. The provisions of the Commercial Code on this point override our earlier decisions.

The judgment is affirmed.