CHURCHILL MOTORS, INC., Respondent, *v.* A. C. LOHMAN, INC., Appellant.

Fourth Department, June 27, 1962.

*Oviatt, Gilman, O'Brien, Forman & Clarke* (*Percival D. Oviatt, Jr.,* of counsel), for appellant.

*Chamberlain, D'Amanda, Bauman & Brundage* (*Arthur VD. Chamberlain* of counsel), for respondent.

HALPERN, J. This case presents the question of the right of the conditional vendor of an automobile, whose security interest therein had been perfected in accordance with the law of the State in which the automobile had been sold, to enforce the contract and to retake the automobile upon default, where the vendee, without the vendor's knowledge or consent, had taken the automobile to another State and sold it to a purchaser for value who was unaware of the outstanding conditional sales contract.

The resale by the vendee in this case took place in Pennsylvania. Therefore the answer to the question turns upon the construction of the Uniform Commercial Code, which was promulgated in 1952 and which was adopted by the Commonwealth of Pennsylvania as of July 1, 1954 (Purdon's Pa. Stat., tit. 12A).

At the time of the promulgation of the Uniform Commercial Code, the generally prevailing rule was that the interest of the conditional vendor would be protected in the circumstances stated. The conditional sale agreement usually prohibited the vendee from taking the automobile out of the State without the vendor's consent. The conditional vendor in such a case would have no reason to anticipate that the vendee would take the automobile out of the State and, in the absence of notice of removal, he would have no opportunity to file the contract in the State to which the automobile had been taken, prior to its resale. Therefore, the risk of loss was thrown upon the person who purchased the automobile from the wrongdoing vendee (*Goetschius* v. *Brightman*, 245 N. Y. 186; 78 C. J. S., Sales, § 568, p. 281). However, there were a few jurisdictions, of which Pennsylvania was one, which threw the risk of loss upon the conditional vendor. In those States, the purchaser from the conditional vendee was held to have acquired a title superior to the interest of the conditional vendor, because the vendor had not filed the contract in accordance with the law of the State to which the automobile had been taken. The interests of the local

purchaser (and local creditors) were thus preferred over those of the out-of-State vendor (*Schmidt* v. *Bader,* 284 Pa. 41 [1925], cited in Pa. Bar Assn. Notes, 12A Purdon's Pa. Stat., 2d vol. pp. 341–342).

The Uniform Commercial Code chose a middle course between the majority and minority views in an effort to arrive at a fair compromise between the conflicting interests of the conditional vendor and the purchaser from the vendee.

Subsection (3) of section 9–103 of the Uniform Commercial Code, 1952 Official Edition, as adopted by Pennsylvania (12A, Purdon's Pa. Stat., 2d vol., pp. 340–341), reads as follows: " (3) If personal property is already subject to a security interest when it is brought into this state, the validity of the security interest is to be determined by the law of the jurisdiction where the property was when the security interest attached, unless the parties understood at that time that the property would be kept in this state and it was brought here within thirty days thereafter for purposes other than transportation through this state. If the security interest was already perfected under the law of the jurisdiction where the property was kept before being brought into this state, the security interest continues perfected here for four months and also thereafter if within the four month period it is perfected here. The security interest may also be perfected here after the expiration of the four month period; in such case perfection dates from the time of perfection in this state. If the security interest was not perfected under the law of the jurisdiction where the property was kept before being brought into this state, it may be perfected here; in such case perfection dates from the time of perfection in this state."

This subsection was amended in 1959, effective January 1, 1960, to conform to the 1958 Official Edition of the Uniform Commercial Code, but the amendments are not material in this case. (See, also, Uniform Commercial Code, § 9–401, subsection [4]; 12A Purdon's Pa. Stat., 2d vol., p. 456.)

As will be seen upon a reading of the quoted subsection, the draftsmen of the code decided that the conditional vendor ought to try to keep track of the location of the property covered by the conditional sale agreement and, if he discovered that the property had been taken to another State, he ought to take reasonably prompt steps to give notice to the public of his interest in accordance with the law of that State. On the other hand, subsequent purchasers and lienors in the State to which the property had been taken would have to take the risk of there being an outstanding security interest in the State from which the property had come, if they purchased the property or acquired a lien upon it shortly after it had been brought into the State and before the

vendor had had an opportunity to discover the facts and to perfect his security interest in accordance with the law of the State. A four-month period was chosen as a reasonable period within which the vendor ought to be able to locate the property and to perfect his security interest in the State to which the property had been taken. This thought was expressed in the Official Comment to the section in the Uniform Commercial Code (as reprinted in 12A Purdon's Pa. Stat., 2d vol., pp. 346–347) as follows: " 6. Collateral may be brought into this State subject to a security interest which has attached and may have been perfected under the laws of another jurisdiction. Under subsection (3) this Article applies from the time the collateral comes into this State, except that (1) the validity of the security interest is determined by the law of the jurisdiction where it arose (unless pursuant to an understanding of the parties the collateral is brought here within 30 days thereafter) and (2) if the security interest was perfected in the jurisdiction where the collateral was kept before being brought here, it continues perfected in this State for four months after the collateral is brought in, although the filing requirements of this Article have not been complied with here. After the four month period the secured party must comply with the perfection requirements of this Article (i.e., must file if filing is required)  *  *  *  Subsection (3) proceeds on the theory that not only the secured party whose collateral has been removed but also creditors of and purchasers from the debtor in this State should be considered. The four month period is long enough for a secured party to discover in most cases that the collateral has been removed and to file in this State; thereafter, if he has not done so, his interest, although originally perfected in the state where it attached, is subject to defeat here by those persons who take priority over an unperfected security interest (see Section 9–301).''

The Uniform Commercial Code was the culmination of a joint project undertaken by the American Law Institute and the National Conference of Commissioners on Uniform State Laws. It was the product of many years of exhaustive study. The Commonwealth of Pennsylvania was the first State to adopt the code. It adopted it on April 6, 1953, effective July 1, 1954. The State of New York adopted the Commercial Code on April 18, 1962, to take effect September 27, 1964 (L. 1962, ch. 553). The code has been adopted in about 17 other States and it is to be expected that it will soon become a nationwide uniform code in fact as well as in name. The State of Rhode Island, the law of which is also involved in this case, adopted the code, effective January 2, 1962 (Public Laws 1960, ch. 147; General Laws of R. Is., tit. 6A).

At the time of the occurrence of the events giving rise to the present litigation, Pennsylvania was the only State, of the States involved in the case, in which the code was in effect.

We turn now to the facts of our case. Most of the facts were stipulated and they are all undisputed. On July 7, 1958, the H. T. Mulry Chevrolet Company of Providence, Rhode Island, sold a Ford Thunderbird automobile to one Samuel I. Greene in Rhode Island. The sale price (the so-called " time " price) was $5,114.32. Seven hundred dollars was paid down, leaving a balance of $4,414.32 to be paid in 36 monthly installments of $122.62, each, to commence on August 11, 1958. Paragraph 5 of the contract provided that the purchaser " shall not remove same [the automobile] from the state without permission of the holder of this contract ". Since Greene gave his residence as Farmingham, Massachusetts, it may possibly be inferred that, notwithstanding the provision of the contract, the parties contemplated that the automobile would be taken to Massachusetts but, except for that possibility, there is nothing to indicate that the parties contemplated that it would be removed from Rhode Island; it certainly was not contemplated that it would be taken to Pennsylvania. The vendor did not have the conditional sale contract filed or recorded in Rhode Island and it is stipulated that it has never been filed or recorded anywhere. However, under the law of Rhode Island, no filing or recording was required; the security interest of the conditional vendor became " perfected " under the law of Rhode Island immediately upon the execution of the contract and delivery of the automobile.

Greene (who was the culprit in the case) took the automobile to Pennsylvania within a few days after he bought it. (He never paid any of the monthly installments called for by the contract.) On July 11, 1958, he sold the automobile to Miracle Mile Motors of Monroeville, Pennsylvania. On July 25, 1958, Miracle Mile Motors resold the automobile at a dealers' auction held in Manheim, Pennsylvania, to the defendant A. C. Lohman, Inc. Lohman paid $3,640 for the automobile and took possession in Pennsylvania. Lohman was an automobile dealer in Rochester, New York and he brought the car to Rochester immediately after its purchase.

The Lohman Company remained in possession of the automobile in New York State until May 15, 1959, when it sold the automobile to the plaintiff Churchill Motors, Inc., another Rochester automobile dealer, for the sum of $3,300. The Lohman Company expressly warranted good title.

Subsequently, the H. T. Mulry Chevrolet Company traced the automobile to the possession of the plaintiff Churchill Motors

and, on August 10, 1959, took the automobile from the Churchill parking lot without its knowledge, upon the ground that the conditional sale contract gave the vendor a superior right to the automobile. Thereupon, the plaintiff brought this action against the Lohman Company for the recovery of its purchase price upon the ground of breach of warranty of title. Judgment was rendered by the County Court in favor of the plaintiff.

It should be added that while Miracle Mile Motors was in possession of the automobile in Pennsylvania, it obtained from the Department of Revenue of the Commonwealth of Pennsylvania a certificate of title pursuant to the Pennsylvania statutes. The certificate of title certified that the Miracle Mile Motors was the lawful owner of the automobile and was entitled to have it registered in its name. However, the certificate of title bore the symbol " T 2 " and on the face of the certificate it was stated that " If the symbol ' T 2 ' appears in the title information above, it indicates this vehicle was brought into Pennsylvania from another state ".

The certificate of title was assigned by an indorsement on the reverse side thereof by Miracle Mile Motors, Inc., to A. C. Lohman, Inc., on July 25, 1958.

As appears from the foregoing, all the transactions in the State of Pennsylvania, with respect to the automobile, took place within four months from the time when it was brought into Pennsylvania. Therefore, under the provisions of subsection (3) of section 9–103 of the Uniform Commercial Code, quoted above, the security interest of the conditional vendor was entitled to full protection in Pennsylvania. The interest had been perfected in Rhode Island, the State in which the automobile had been kept " before being brought into this state " and therefore the security interest continued " perfected here for four months ". Therefore, Miracle Mile Motors and the Lohman Company both took subject to the outstanding interest of the conditional vendor (*Casterline* v. *General Motors Acceptance Corp.*, 195 Pa. Superior Ct. 344 [1961]).

The resale by Lohman to the plaintiff Churchill Motors took place more than four months after the automobile had been brought into Pennsylvania, and also more than four months after it had been brought into New York, but this transaction took place in the State of New York and the Uniform Commercial Code had not been adopted in New York at that time. Under the then existing New York law, in accordance with the majority rule referred to above, the security interest of a conditional vendor, perfected in the State in which the original sale had been made, was entitled to full protection in New York, even

though the contract had not been filed in New York (*Goetschius v. Brightman*, 245 N. Y. 186, *supra*). There was a provision in the New York State conditional sales law in effect in 1958 and 1959 which required the vendor to refile in this State a contract relating to property brought here from another State within 10 days after he received notice of its removal to this State (Personal Property Law, § 74, subsequently amd. by L. 1960, ch. 1004 in respects not material here). But it is undisputed that the conditional vendor in our case did not have notice of the fact that the automobile had been brought into New York State prior to the sale in this State by the defendant Lohman to the plaintiff Churchill Motors. [The New York law in this respect will be changed when the Uniform Commercial Code goes into effect in New York. Notice to the out-of-State vendor of the removal to New York State will no longer be required in order to charge him with a duty to refile here. His security interest will cease to be a perfected one four months after the automobile is brought into this State, if he does not refile (New York Annotations to Uniform Commercial Code by the New York Commission on Uniform State Laws [1961], pp. 250–251).]

It must therefore be concluded that the plaintiff never acquired title superior to that of the conditional vendor and that the conditional vendor acted justifiably in retaking the automobile from the plaintiff's possession. The defendant was therefore properly held liable on both its express and implied warranties of title.

The *Goetschius* case (*supra*) dealt with an automobile which had been sold in California at a time when the California law did not require any filing to perfect the security interest of the vendor. Nevertheless, the Court of Appeals held that the security interest was a duly perfected one entitled to protection in this State. Similarly, in our case, the State of Rhode Island did not require any filing and the interest of the conditional vendor must be regarded as a perfected security interest from the time when the contract was made. This is true also under the Uniform Commercial Code, insofar as it bears upon the Pennsylvania transactions involved in this case. Under the Uniform Commercial Code, the interest of the vendor under an unfiled conditional sale contract must be regarded as a perfected interest, if the State in which the security interest was created did not require any filing.

The defendant-appellant stresses the fact that the conditional vendor did not file the contract in Pennsylvania within four months after the automobile had been brought into the State or at any time thereafter. But the subsequent failure to file is not material in the situation before us. Under the provisions of the

Uniform Commercial Code, the conditional vendor's interest continued to be a perfected interest for four months. At the end of that period, it ceased to be a perfected interest and became an unperfected one but there is no provision which forfeits the four-month period of protection because of the failure to file prior to its expiration. The four-month period under the Uniform Commercial Code is thus different from the 10-day grace period allowed under the New York conditional sales law for the original filing of a conditional sale contract (Personal Property Law, § 65). Under the New York statute, if the contract is filed within 10 days, the interest of the vendor is deemed perfected from the beginning but if he fails to file within 10 days, then the security interest of the vendor remains unperfected from the time of the original sale. (See the provision for a similar 10-day grace period for filing with respect to a purchase-money security interest in subsection [2] of section 9–301 of the Uniform Commercial Code.) In contrast with this, the four-month period provided in subsection (3) of section 9–103 of the Uniform Commercial Code is not a grace period for filing; it is an absolute period of protection of the vendor's security interest designed to give him adequate time to make an investigation and to locate the property. If the vendor fails to file within the four-month period, the protection of his security interest ceases upon the expiration of that period and his unperfected security interest is thereafter subject to being defeated in the same way in which any unperfected security interest may be defeated under the code. A subsequent purchaser for value without notice of the unperfected security interest would take a title superior to it (Uniform Commercial Code, §§ 9–301, 9–307, 1–201, subsection [9]). But a prior purchaser who had purchased during the four-month period of statutory protection is not retroactively given a superior title. He is not in the same position as a subsequent purchaser who acquired his interest after the expiration of the four-month period. If the resale to the plaintiff Churchill Motors after the four-month period had taken place in Pennsylvania and had been governed by the provisions of the Uniform Commercial Code, the plaintiff would have acquired a superior title but, as we have seen, that transaction took place in New York and it was not subject to the provisions of the Uniform Code.

The case of *Casterline* v. *General Motors Acceptance Corp.* (195 Pa. Superior Ct. 344 [1961], affg. 50 Luzerne County 42, *supra*) disposes of most, if not all, of the points in our case. In the *Casterline* case, an automobile had been sold under a conditional sale contract in New York State on October 15, 1957. On

the same day, the vendee drove the car to Pennsylvania and there sold it to the plaintiffs, who were automobile dealers. They obtained a Pennsylvania certificate of title and resold the automobile to a customer. The defendant General Motors Acceptance Corp. to whom the conditional sale contract had been assigned, retook possession from the customer. The purchase price was repaid to him by the plaintiffs and they brought an action against the GMAC. The court held that the interest of the conditional vendor had been perfected under the law of New York, even though the contract had not been filed, because the New York statute allowed the vendor 10 days in which to file and the 10 days had not yet expired. (The contract was later filed in New York, within the 10-day period, so the perfection of the security interest was not retroactively defeated under the New York statute.) The court held that, under the Uniform Commercial Code, the vendor's interest was protected as against the claim of the innocent purchaser in Pennsylvania. The court noted that the case of *First Nat. Bank of Jamestown* v. *Sheldon* (161 Pa. Superior Ct. 265) (which is the case principally relied upon by the defendant-appellant in our case) had been decided before the effective date of the Uniform Commercial Code. The court added (p. 355): " The conclusion here reached under the Uniform Commercial Code is in accord with the rule in the majority of jurisdictions without any statutory provision such as § 9–103(3)   *   *   * Pennsylvania which was almost alone in the minority before the code (14 C. J. S. 609, n. 19), had adopted the majority rule legislatively in § 9–103(3) of the code. The provisions of the Commercial Code on this point override our earlier decisions ".

The decision in the *Casterline* case also disposes of any contention which might be made that the issuance of the title certificate to Miracle Mile Motors, under the Pennsylvania statute with respect to title certificates for motor vehicles, gave the purchaser in Pennsylvania any right superior to that of the conditional vendor. The court said (p. 355): " It is to be noted that the language of § 9–103(3) of the Uniform Commercial Code makes it clear that the requirements of § 203 of The Vehicle Code with regard to the notation of security interests in motor vehicles on the title certificate, no longer apply to interests obtained outside Pennsylvania in circumstances such as we have before us in states which have no provision for such notation ". (See, also, *Safeway Finance Co.* v. *Heintzl,* 43 Erie County L. J. 132 [1959], discussed in 66 Dickinson L. R. 39, 58; 3 C. C. H. Instalment Credit Guide — Pennsylvania ¶230.05. See, generally, 70 Yale L. J. 995, 1020–1022.)

*General Motors Acceptance Corp.* v. *Manheim Auto Auction* (57 Lanc. L. Rev. 457; 25 D & C 2d 179 [1961], discussed in 3 Boston College Industrial and Commercial Law Review 432–433) holding to the contrary of the *Casterline* case, was decided before the *Casterline* case had been affirmed by the Superior Court of Pennsylvania and must be deemed to have been overruled by that case.

Mention should be made of subsection (4), which was added to section 9–103 by an amendment in 1959 (Public Law 1023, § 9), reading as follows: " (4) Notwithstanding subsections (2) and (3), if personal property is covered by a certificate of title issued under a statute of this state or any other jurisdiction which requires indication on a certificate of title of any security interest in the property as a condition of perfection, then the perfection is governed by the law of the jurisdiction which issued the certificate."

This amendment was part of a general revision of the Uniform Commercial Code to take effect on January 1, 1960, to bring the Pennsylvania statute into conformity with a revision of the Uniform Commercial Code in 1958. The purpose of the amendment was stated by the Editorial Board as follows: " Subsection (4) is new to avoid the possible necessity of duplicating perfection in the case of vehicles subject to a certificate of title law requiring compliance therewith to perfect security interests. The certificate of title law requirements are adopted as the test for perfection." [1956 Recommendations of the Editorial Board for the Uniform Commercial Code, p. 257.]

As the note by the draftsmen makes clear, subsection (4) does not have any application to an automobile which was sold under a conditional sale contract in a State which did not require " indication on a certificate of title of any security interest in the property as a condition of perfection ", and which was subsequently brought into a State which had such a requirement. The Lancaster County Common Pleas Court which decided *General Motors Acceptance Corp.* v. *Manheim Auto Auction* (*supra*) was in our opinion in error in suggesting the contrary. In any event, the new subsection was not in effect at the time of the transactions in Pennsylvania involved in our case and therefore it has no bearing upon the disposition of the case.

The judgment appealed from should therefore be affirmed, with costs.

WILLIAMS, P. J., BASTOW, McCLUSKY and HENRY, JJ., concur.

Judgment unanimously affirmed, with costs.