In re the DUPLAN CORPORATION, Debtor.

IMPERIAL CHEMICAL INDUSTRIES LIMITED, Plaintiff,

v.

Alfred P. SLANER, as reorganization Trustee of the Duplan Corporation, Debtor, Defendant.

No. 76 B 1967 (KTD).

United States District Court, S. D. New York.

July 30, 1978.

Davis, Polk & Wardwell, New York City, for plaintiff by Donald N. Dirks, New York City, of counsel.

Shea, Gould, Climenko & Casey, New York City, for defendant by Remy J. Ferrario, Lonn A. Trost, New York City, of counsel.

## OPINION & ORDER

KEVIN THOMAS DUFFY, District Judge.

Defendant Alfred P. Slaner, as Trustee in Reorganization of The Duplan Corporation ("Duplan"), has moved (i) for an order, pursuant to Rule 12(b)(6), F.R.Civ.P., Bankruptcy Rule 712(b) and Chapter X Rule 10–701, dismissing plaintiff's second amended complaint ("complaint"), (ii) for judgment on the pleadings, pursuant to Rule 12(c), F.R.Civ.P., Bankruptcy Rule 712(b) and Chapter X Rule 10–701, dismissing the complaint, and (iii) for judgment on the pleadings in the Trustee's favor for $29,-714.94 plus interest and costs and disbursements.

On August 31, 1976, Duplan filed a petition for an arrangement under Chapter XI of the Bankruptcy Act. By order of Bankruptcy Judge Galgay dated October 5, 1976, the proceedings were transferred to Chapter X. On October 6, 1976, pursuant to my order, Alfred P. Slaner was appointed as Duplan's Reorganization Trustee.

This adversary proceeding to reclaim goods or recover immediate payment therefor was commenced on or about July 1, 1977. For the purposes of this motion, the factual allegations of the complaint are uncontroverted.

The goods in question consist of a quantity of nylon multifilament yarn ("yarn") sold and delivered by plaintiff to Duplan pursuant to a written agreement dated April 4, 1976. The agreement provided for payment in full within sixty days from the date of invoice and contained, *inter alia*, the following terms and conditions:

2. . . .
PASSING OF PROPERTY:
(b) Notwithstanding delivery, the property in the goods shall remain in Seller until Buyer has paid in full therefor. If such payment is overdue in whole or in part Seller may (without prejudice to any of his other rights) recover or resell the goods or any of them and may enter upon Buyer's premises for that purpose. If any of the goods are incorporated in others goods before such payment, the property in the whole of such other goods shall be and remain with Seller until such payment has been made . . . .

 \* \* \* \* \* \*

14. PROPER LAW AND JURISDICTION
All disputes arising out of or in connection with this contract shall be governed by English law and Buyer accepts jurisdiction of such Courts whether in England or elsewhere as Seller may nominate.

Pursuant to the contract, five shipments of yarn were shipped from the Netherlands and were delivered to and accepted by Duplan at its Dillon, South Carolina plant during the period July 2 to August 23, 1976. Duplan failed to pay the agreed price of $190,108.42 for the shipments, except that on August 24, 1976, Duplan paid plaintiff

$29,714.94 which plaintiff applied to reduce Duplan's indebtedness on the yarn to $160,-393.48. It is this sum, or alternatively, return of the goods which plaintiff now seeks.

With regard to the $29,714.94 payment applied by plaintiff, the Trustee has asserted counterclaims seeking damages in the amount of that payment for breach of contract and conversion. These counterclaims essentially allege that Duplan's August 24, 1976 payment of $29,714.94 represented sums due plaintiff under an August, 1976 agreement between the parties for the purchase and sale of goods, comprised of nylon multifilament yarn singles and loaned tubes, which plaintiff concededly failed to deliver to Duplan.

## I

To support its claim of present entitlement to reclamation of the goods (First Claim), or, alternatively, to payment of the balance of the purchase price therefor insofar as any of the yarn has been resold or transferred (Second Claim), plaintiff alleges that it has a valid perfected security interest in the goods which takes priority over the rights therein of Duplan or the Trustee as of August 31, 1976, the date of the filing of Duplan's Chapter XI petition. In this connection, it must be noted that under Section 70(c) of the Bankruptcy Act, 11 U.S.C. § 110(c), the Trustee is deemed a hypothetical lien creditor as of the date of the filing of Duplan's petition for an arrangement under Chapter XI. This status

is accorded the Trustee as well under the South Carolina Uniform Commercial Code § 36–9–301(3),[1] the body of law upon which plaintiff relies for the priority of its claim over the Trustee's lien.

Plaintiff alleges, then, as the source of its rights Sections 36–2–401(1) and 36–9–103(3) of the South Carolina Uniform Commercial Code (S.C.Code) as applied to either Netherlands or English law with respect to the effect to be given the retention of title clause (Clause 2(b)) of the April 4, 1976 agreement. It is plaintiff's position that the title retention clause created a security interest in the yarn in favor of plaintiff by virtue of S.C.Code § 36–2–401(1), which limits any retention of title in delivered goods to a reservation of a security interest,[2] as well as a valid and enforceable ownership right in plaintiff under either Netherlands or English law. Apparently, because neither Netherlands or English law provides for filing or notice to third parties of such right, plaintiff argues that its ownership right/security interest must be deemed a perfected one in either of those jurisdictions so as to afford plaintiff the benefit of the four month continuation of perfection provision of S.C.Code. § 36–9–103(3). This section provides, *inter alia*, that if a seller's security interest already was perfected in the jurisdiction in which the security interest attached, it remains perfected for four months after delivery of the goods into South Carolina.[3] Plaintiff alleges that be-

1. S.C.Code § 36–9–301(3) provides:

"(3) A *'lien creditor'* means . . . a trustee in bankruptcy from the date of the filing of the petition . . . . Unless all the creditors represented had knowledge of the security interest such a representative of creditors is a lien creditor without knowledge even though he personally has knowledge of the security interest."

The *Trustee's ideal lien creditor status* under Section 70(c) of the Bankruptcy Act, however, is unaffected by the knowledge of the security interest which may be possessed by all the creditors represented. *See In re Dennis Mitchell Industries, Inc.,* 419 F.2d 349, 354 (3d Cir. 1969). Since no issue regarding such knowledge has been raised in the instant case, the same is irrelevant for the purposes of this motion and the Trustee shall be considered a lien

creditor without knowledge for the purposes of this motion.

2. Section 36–2–401(1) provides in relevant part:

. ". . . . Any retention or reservation by the seller of the title (property) in goods shipped or delivered to the buyer is limited in effect to a reservation of a security interest. Subject to these provisions and to the provisions of the chapter on secured transactions (Title 36, Chapter 9), title to goods passes from the seller to the buyer in any manner and on any conditions explicitly agreed on by the parties."

3. Section 36–9–103(3) provides:

"(3) If personal property other than that governed by subsections (1) and (2) is already subject to a security interest when it is

cause the yarn deliveries arrived in South Carolina within four months of August 31, 1976, it had a perfected security interest in the goods on the date on which the Trustee's lien attached by operation of law, and thus has rights therein superior to those of Duplan or the Trustee.

■ The Trustee challenges the legal sufficiency of the complaint and contests plaintiff's claim to a perfected security interest under S.C.Code provisions as applied to English or Netherland law as alleged.[4] Maintaining that plaintiff is merely a general unsecured creditor of Duplan, the Trustee insists that plaintiff is entitled only to file a proof of claim against Duplan in the Chapter X proceedings in the disputed amount and to share subsequently to the extent provided in a confirmed reorganization plan. The legal sufficiency of plaintiff's claim to reclamation is separately challenged.

Since this action essentially seeks to resolve the relative priorities between plaintiff's interest in the goods and the Trustee's lien thereon, it must be emphasized that under S.C.Code § 36–9–301(1)(b) an "unperfected security interest is subordinate to the rights of . . . a person who becomes a lien creditor without knowledge of the security interest [*i. e.*, the Trustee][5] and before it is perfected." Thus, in order to succeed, plaintiff must have been possessed of a perfected security interest in the yarn prior to the time that the Trustee's lien attached.

■ Both sides have submitted affidavits of foreign counsel interpreting the effect to be given Clause 2(b) under either Netherlands or English law. On the basis of its submissions, plaintiff asserts that it validly reserved title to the yarn and that this foreign right of ownership must be deemed a security interest under S.C.Code § 36–2–

brought into this State, the validity of the security interest in this State is to be determined by the law (including the conflict of laws rules) of the jurisdiction where the property was when the security interest attached. However, if the parties to the transaction understood at the time that the security interest attached that the property would be kept in this State and it was brought into this State within 30 days after the security interest attached for purposes other than transportation through this State, then the validity of the security interest in this State is to be determined by the law of this State. *If the security interest was already perfected under the law of the jurisdiction where the property was when the security interest attached and before being brought into this State, the security interest continues perfected in this State for four months and also thereafter if within the four month period it is perfected in this State.* The security interest may also be perfected in this State after the expiration of the four month period; in such case perfection dates from the time of perfection in this State. If the security interest was not perfected under the law of the jurisdiction where the property was when the security interest attached and before being brought into this State, it may be perfected in this State; in such case perfection dates from the time of perfection in this State." (emphasis supplied)

4. Because plaintiff bases its claim on the law of South Carolina, including its conflict-of-law rules as contained in S.C.Code, and defendant contests that claim under the same provisions,

I need not engage in an initial exercise in conflicts-of-law which might otherwise be warranted in view of the English choice-of-law contractual provision, the Netherlands shipments, and the South Carolina situs of the deliveries.

I note, however, that in cases such as this, involving a Trustee's lien under Section 70(c) of the Bankruptcy Act and legal relationships possibly controlled by varying state and national laws, the obligation to apply the forum state's conflict-of-law rules as mandated under *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1913), in diversity cases is absent, and the tendency is to apply the law of the situs of the property at bankruptcy. *In re Dennis Mitchell Industries, Inc., supra*, 419 F.2d at 353 n. 10, 4A Collier on Bankruptcy ⸢ 70.04 n. 31 at 60–61, ⸢ 70.49 at 605.06 (14th ed. 1976).

In any event, both New York (the forum state) and South Carolina (the purported situs of the property on the date of the filing of the Chapter XI petition) whose law, including conflicts law, is deemed controlling for the purposes of this motion, had adopted the Uniform Commercial Code with identical conflict-of-law rules as of the date that Duplan's petition was filed. *Compare* N.Y.U.C.C. §§ 1–105, 9–103(3) (McKinney 1964) *with* S.C.Code §§ 36–1–105, 36–9–103(3). (On July 2, 1978, N.Y.U.C.C. § 9–103 was repealed and a substitute provision adopted; as of the date of this opinion, South Carolina had not similarly acted.)

5. *See* note 1 *supra*.

401(1). In so asserting, plaintiff evidences an initial confusion of the provisions of § 36–9–103(3) regarding the law applicable to a determination of the validity of its claimed security interest. By virtue of the second sentence of § 36–9–103(3), plaintiff's contractual reservation of title would be deemed a security interest without reference to foreign law "if the parties . . . understood at the time that the security interest attached that the property would be kept in [South Carolina] and it was brought into [South Carolina] within 30 days" of attachment.[6] If such was not the parties' understanding, then, under the first sentence of § 36–9–103(3), the law of the jurisdiction where the property was located when the security interest attached would govern the validity of the purported security interest. The Trustee asserts that the 30-day provision contained in the second sentence controls, and because plaintiff relies on § 36–2–401(1) to validate its security interest, I must assume that plaintiff does not contest the applicability of that provision. Consequently, for the purposes of this motion, I must conclude that plaintiff has a security interest in the yarn.

█ The crucial question, then, is whether plaintiff's security interest was perfected by August 31, 1976. Under the S.C.Code, a consensual security interest which arises by virtue of § 36–2–401(1) is subject to the perfection and priority provisions of Chapter 9 of the Code so long as the debtor lawfully has possession of the goods. S.C. Code § 36–9–113. Since the goods had been delivered to Duplan, plaintiff must have filed a financing statement to perfect its security interest in order to retain the same under South Carolina law. S.C.Code § 36–9–302; U.C.C. Official Comment to § 9–113 n. 3. Concededly, no such financing statement was filed prior to delivery or to August 31, 1976. Consequently, if South Carolina law governed the issue of perfection, plaintiff's security interest would be unperfected and the Trustee's lien would take priority.

Plaintiff alleges and argues that under the third sentence, or continuation of perfection provision, of § 36–9–103(3), the law "of the jurisdiction where the property was when the security interest attached and before being delivered" to South Carolina governs the issue of perfection. However, the United States Court of Appeals for the Fourth Circuit (which circuit includes South Carolina) has held that where the second sentence, or 30-day provision, of § 9–103(3) applies, the term "validity" used therein must be read to mean "perfection" as well, so that the law of the state into which the goods have been delivered within 30 days of attachment of the security interest therein controls the issue not only of the security interest's validity but also of its perfection. *In re Automated Bookbinding Services, Inc.,* 471 F.2d 546, 554–55 (4th Cir. 1972). In reaching this conclusion, the Fourth Circuit examined the underlying policy of § 9–103(3), the purpose of which is to protect secured parties from absconding debtors by allowing them a four month period to discover that the collateral has been removed and to file in that second state without losing the original perfection. Uniform Code Comment to § 9–103 n. 7. The court reasoned that in a situation where the secured party knows about the transfer or itself transfers the collateral pursuant to a contract with the debtor, such protection is not required. It thus concluded that when the secured party in such a situation surrenders possession of the goods, the four-month grace period of § 9–103(3) is an unavailable device to temporarily exempt the seller from filing in the transferee state.

█ The result reached by the Fourth Circuit is a sound one which renders meaningful an otherwise illogical reading of § 36–9–103(3) in its entirety. *See generally* 1 Gilmore, Secured Interest in Personal Property § 22.9 at 629 (1965). Since plaintiff concededly did not perfect its security interest under South Carolina law prior to

---

6. *See* note 3 *supra*.

its relinquishing possession of the yarn, its claim must fail.[7]

■ However, even were plaintiff's assertions concerning the applicability of the third sentence of § 36–9–103(3) persuasive, its security interest could not be deemed perfected so as to possibly prevail over the Trustee's lien.[8] In order to succeed, plaintiff's security interest must have been "already perfected" under the law of the jurisdiction where it attached. Plaintiff presumes that this relevant jurisdiction is either the Netherlands or England.[9] It is not disputed that neither English nor Netherlands law addresses the concept of perfection nor provides a filing or notice mechanism by which plaintiff's interest could be afforded protection. However, relying on *Al Maroone Ford, Inc. v. Manheim Auto Auction, Inc.* (*Maroone*), 205 Pa.Super. 154, 208 A.2d 290 (1965); *Churchill Motors, Inc. v. A. C. Lohman, Inc.* (*Churchill*), 16 A.D.2d 560, 229 N.Y.S.2d 570 (4th Dept.1962); and *Casterline v. General Motors Acceptance Corp.* (*Casterline*), 195 Pa.Super. 344, 171 A.2d 813 (1961), plaintiff posits that its contractual ownership right, transformed into a security interest by operation of § 36–2–401(1), must be deemed perfected in either the Netherlands or England since it is valid and enforceable there without any notice requirement.

*Casterline* presented a situation in which an automobile purchased under a conditional sales contract in a non-code jurisdiction (New York) was removed without the vendor's consent into a code jurisdiction (Pennsylvania). Although the vendor's assignee had complied with applicable New York law by filing the conditional sales contract within ten days of its execution, no notation of the vendor's interest had been noted on the title certificate as required for protection of his interest in Pennsylvania. In holding that the security interest of the vendor's assignee was perfected within the meaning of 12A P.S. § 9–103(3), the court determined that perfection as used in the third sentence of § 9–103(3) means that at the time the property was brought into the code state, the security interest therein was protected generally in the non-code state against those classes of creditors, purchasers and lienholders against whom a perfected security interest would be protected in the code state. *Casterline, supra,* 171 A.2d at 818. While *Maroone* relied on *Casterline* without discussion in a similar case involving the same jurisdictions, *Churchill* summarily adopted *Casterline's* view of perfection in a situation in which the non-code jurisdiction (Rhode Island) specifically absented conditional sales contracts from any

7. Further support for this reading of § 36–9–103(3) is found in the South Carolina Reporter's Comments to § 36–9–103:

Subsection (3) deals with the problem where collateral is moved into the state after perfection in another state and is similar to S.C. Code Section 46–150.44 applicable to motor vehicles. The first sentence of this subsection adopts the majority common law rule of protecting the secured party who has complied with the perfection law of the state where the security interest attached. . . . The second sentence recognizes the usually applied exception to the general rule that where the secured party consents or knows of the removal of the collateral into another state, he must *perfect according to the laws of that state in order to enjoy protection against third parties.* See, e. g., Rest. Conflicts of Laws. Sections 269–271 (1934). In accord, S.C.Code Section 46.150 44(1). (emphasis supplied)

8. I use the phrase "possibly prevail" since an issue has been presented as to whether the four month period allowed under § 36–9–103(3) is one of absolute perfection or one of grace which must be made absolute by perfection in South Carolina prior to the expiration of the four months. Since I have determined that plaintiff's security interest is an unperfected one, I need not reach this issue.

9. In order for attachment to occur, there must be an agreement that a security interest attach, value must be given and the debtor must have rights in the collateral. S.C.Code § 36–9–204. Plaintiff has not indicated where attachment occurred or when the debtor acquired rights in the collateral so that attachment can be pinpointed; instead, plaintiff merely argues that either England or the Netherlands is the relevant jurisdiction. It would appear consistent with the position taken with respect to the 30-day provision that plaintiff's interest attached in the Netherlands; however, my decision on this motion renders it unnecessary to reach such a conclusion.

filing or recording requirement but offered protection to the conditional vendor against third party conflicting interest immediately upon execution of the contract and delivery of the property.

The precedent established by *Casterline* has been restricted to its facts, *see IAC, Ltd. v. Princeton Porsche-Audi*, 147 N.J.Super. 212, 371 A.2d 84, 87 (1977), and severely criticized. *In re Moore*, 7 UCCRS 578, 584–87 and n. 29 (D.C.Me.) (Referee in Bankruptcy). An examination of *Casterline's* underpinnings in view of South Carolina code provisions leads me to conclude that it should not be followed in this case.

The *Casterline* court expressed its compulsion to reach the conclusion it came to for the following reasons:

> Perfection in the Pennsylvania method of notation on the title certificate is impossible in New York when there is no statutory provision for such notation. Moreover the New York Act does not use the word "perfection" or spell out some of the nice distinctions made by the Uniform Commercial Code between perfected and unperfected interests and situations that lie between the two. The introductory clause to § 9–303(1) setting forth the conditions under which a security interest is perfected seems to recognize this. Section 9–303(1) begins with the clause: "Except as provided in Section 9–103 with reference to property which is already subject to a perfected security interest when it is brought into this state * * *" Then follows the various methods of perfecting in Pennsylvania.

*Casterline, supra*, 171 A.2d at 818. However, none of those reasons are valid today. In the first instance, the adoption of the Uniform Commercial Code in New York and the addition of § 9–103(4) covering the law governing perfection in title certificate situations obviated the *Casterline* problem. More glaring, however, is the fact that the introductory clause of § 9–303(1) relied on by the *Casterline* court is no longer law.

*See In re Moore, supra*, 7 UCCRS at 585 n. 24. Instead, S.C.Code § 36–9–303 provides:

> (1) A security interest is perfected when it has attached and when all of the applicable steps required for perfection have been taken. Such steps are specified in §§ 36–9–302, 36–9–304, 36–9–305 and 36–9–306. If such steps are taken before the security interest attaches, it is perfected at the time when it attaches.
>
> (2) If a security interest is originally perfected in any way permitted under this chapter and is subsequently perfected in some other way under this chapter, without an intermediate period when it was unperfected, the security interest shall be deemed to be perfected continuously for the purposes of this chapter.

No separate recognition is accorded the method of perfection under § 9–103(3). That perfection under § 9–103(3) is intended to mean that which it otherwise means as set forth above, and that § 9–103(3) merely prescribes a choice of law mechanism, is evidenced by the following comment offered by the drafters of the Code:

> The rule of subsection (2) would also apply to the case of collateral brought into this state subject to a security interest which became perfected in another state or jurisdiction. See Section 9–103(3).

Official Comment to § 9–303 n. 2. Consequently, plaintiff's position must be rejected.

Since plaintiff's security interest was never perfected, it cannot prevail over the Trustee's lien. Accordingly, plaintiff's claims to reclamation of the yarn,[10] or to immediate payment therefor, must fail at this time since they are based on its perfected secured status and purported superior right in the yarn to that of the Trustee. Of course, plaintiff is free to file a proof of claim against Duplan in the Chapter X proceedings.

## II

The remaining portion of the Trustee's motion seeks judgment on his counterclaim

---

**10.** Plaintiff has failed to address the Trustee's arguments directed at the legal insufficiency of the claim to reclamation. My decision, however, obviates the need to separately address this issue.

in the sum of $29,714.94, which allegedly represents payment to plaintiff for undelivered goods. The Trustee originally argued that the goods covered by this $29,714.94 payment were comprised of textiles, other than the yarn which forms the subject matter of the complaint, ordered in a separate transaction therefrom, and that plaintiff improperly set off the $29,714.94 payment against Duplan's indebtedness for the yarn. It appears, however, that the Trustee now concedes that the goods covered by the $29,714.94 payment were to be an additional shipment of that very yarn. Trustee's Reply Memorandum of Law, p. 19. I note that the plaintiff's reply to the Trustee's counterclaims so alleges. Reply ¶ 1. Notwithstanding this concession, the Trustee maintains that the plaintiff's impermissible set-off of these funds should not be countenanced as a matter of law.

At this juncture, the Trustee's motion must be denied. Firstly, there appears a factual question as to the nature of plaintiff's application of the payment in issue. Secondly, in a reorganization context, the allowance or denial of the right to set-off recognized by Section 68a of the Bankruptcy Act, 11 U.S.C. § 108a, turns on equitable principles and depends on the facts presented in each case. *See Lowden v. Northwestern National Bank*, 298 U.S. 160, 166, 56 S.Ct. 696, 80 L.Ed. 1114 (1936); *In re Yale Express Systems, Inc.*, 362 F.2d 111, 116–17 (2d Cir. 1966). To permit or deny such a set-off, if that is found to be the nature of the application of the disputed funds, prior to a development of the relevant facts, would be inappropriate.

In sum, then, that portion of the Trustee's motion which seeks judgment on the pleadings dismissing the complaint is granted; that portion which seeks judgment on the counterclaims in the sum of $29,714.94 plus interest and costs and disbursements is denied.

IT IS SO ORDERED.